**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| GE COMMERCIAL DISTRIBUTION FINANCE CORP., Plaintiff, v. GREAT COVE MARINA, INC., et al., Defendants. | Civil Action No.: 05-4661 (JLL) **OPINION** |
|---|---|

**LINARES**, District Judge.

Currently before the Court are cross-motions for summary judgment filed by Plaintiff, GE Commercial Distribution Finance Corp., and Defendant, Great Cove Marina, Inc. and its alleged guarantors, respectively. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, both motions are denied.

**BACKGROUND**[1]

Great Cove Marina Inc. ("Great Cove") entered into a Security Agreement with Bombardier Capital, Inc. ("Bombardier") on November 5, 1999 (hereinafter referred to as "Security Agreement"), which required, in relevant part, that Great Cove make certain scheduled payments to Bombardier in order to receive an extension of credit which would allow Great Cove

[1] The following facts are undisputed unless noted otherwise.

to purchase small boats to sell at its marina in Hopatcong, New Jersey. In order to secure its obligations under the Security Agreement, Great Cove granted Bombardier a security interest in certain collateral, including, but not limited to, inventory owned by Great Cove. In addition, Kathleen Calabrese, Vincent Calabrese, Jr. and Antonio Cappello entered into Guaranty Agreements with Bombardier wherein they agreed to personally guaranty Great Cove's obligations under the Security Agreement. Calabrese & Cappello Realty, Inc. entered into a similar corporate guaranty with Bombardier in November 2004, after which the parties proceeded, for a period of time, to perform their respective obligations under the Security Agreement.

However, at some point between 2004 and 2005, Great Cove failed to fulfill its obligations under the Security Agreement when it presented Bombardier with a check which was subsequently returned due to insufficient funds.[2] As a result of this default, certain units of Great Cove's collateral were repossessed and ultimately liquidated. By May 2005, Bombardier had entered into an agreement with GE wherein it agreed to transfer its interest in certain of its assets to GE.

GE, now claiming to be successor in interest to Bombardier's right, title and interest in the Security Agreement, commenced the instant cause of action in September 2005, seeking damages from Great Cove for breach of the November 1999 Security Agreement.[3] The parties filed cross-motions for summary judgment in January 2008. The main issues currently in dispute

---

[2] The Court notes that there is some dispute as to the specific date on which the default took place. See Pl.'s Response to Def. Statement of Undisputed Facts, ¶ 9.

[3] This Court's jurisdiction is premised on 28 U.S.C. § 1332.

are: (a) whether GE is the assignee of Bombardier's interest in the November 1999 Security Agreement (and, thus, whether GE has standing to bring this cause of action), and (b) whether the personal guaranty of Vincent Calabrese, Jr. had been revoked by the date on which the breach occurred.

**LEGAL STANDARD**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

Finally, on cross-motions for summary judgment, the Court must construe the facts and draw all inferences "in favor of the party against whom the motion under consideration is made." Pichler v. UNITE, No. 06-4522, 2008 WL 4138410, at *3 (3d Cir. Sept. 9, 2008) (quoting

Samuelson v. LaPorte Cmty. Sch., 526 F.3d 1046, 1051 (7th Cir. 2008)). In doing so, the Court may not, however, "weigh the evidence or make credibility determinations as 'these tasks are left for the fact-finder.' " Id. (quoting Pertruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir.1993)). With this framework in mind, the Court turns now to the parties' cross-motions.

## DISCUSSION

GE moves for summary judgment on the basis that Defendants admit that they are in default of the Security Agreement and that, as a result, there are no genuine issues of material fact in dispute as to whether Defendants breached the Security Agreement. Defendants move for summary judgment on the basis that GE cannot demonstrate that it is entitled to recover under the Security Agreement and that, as a result, GE's Complaint should be dismissed. The Court will now consider each motion, in turn.

### A. Plaintiff's Motion for Summary Judgment

Plaintiff argues that there are no genuine issues of material fact in dispute inasmuch as Defendants do not dispute their liability in this breach of contract case. While Plaintiff is correct in noting that Defendants concede that they defaulted on their contractual obligations by failing to make certain scheduled payments, Defendants maintain, however, that (a) such obligations were owed to Bombardier pursuant to the terms of the Security Agreement — not to Plaintiff;[4] and (b) there is a material question of fact as to whether the personal guaranty of Vincent

[4] See Def.'s Response to Pl.'s Statement of Undisputed Facts, ¶¶ 2, 9.

Calabrese, Jr. had been revoked by the date on which the default occurred.[5] Based on the reasons that follow, the Court agrees that there is a genuine issue of material fact as to whether Mr. Calabrese's personal guaranty had, in fact, been revoked by the date on which the default occurred.

The Guaranty Agreement signed by Mr. Calabrese provides, in relevant part, the following:

> In consideration of, and in order to induce Bombardier Capital, Inc. ("BCI") to extend credit to Great Cove Marina, Inc. ("Dealer"), the undersigned (and if there is more than one undersigned, each of them, jointly and severally) . . . guarantees full, prompt, or contingent, due or to become due, now existing or hereafter arising, which are incurred prior to the receipt by BCI of written notice of revocation of this Guaranty by Guarantor, which notice of revocation shall not affect rights acquired by BCI prior to its receipt . . . .

(Kathleen Calabrese Cert., Ex. B). In opposing Plaintiff's motion for summary judgment, Mr. Calabrese certifies that he, in fact, signed a personal guaranty for certain obligations Great Cove had with respect to Bombardier back in November 1999. (Id., ¶ 2). However, after becoming "gravely ill" in 2003, Mr. Calabrese represents that he asked his wife's brother, Antonio Cappello, who was managing the marina at that time, to "call our representative at Bombardier to see what had to be done" in order to revoke his personal guaranty. (Id., ¶¶ 3-5). It was Mr. Calabrese's understanding that "[a] letter was then written [by Mr. Cappello] asking that I be taken off the guaranty." (Id., ¶ 5). The Certification submitted by Mr. Cappello supports this

[5] See Def. Opp'n Br. at 7; Def.'s Response to Pl.'s Statement of Undisputed Facts, ¶ 9.

representation. (Cappello Cert., ¶ 3).

In particular, Mr. Cappello certifies that, at some point in 2004, he was contacted by his sister concerning the removal of her husband, Mr. Calabrese, from the personal guaranty. (Cappello Cert., ¶ 3). Mr. Cappello further certifies that, as a result, he contacted a Bombardier sales representative by the name of Milt Kirk, who, in turn, advised him to send a written letter to Bombardier at their offices in Colchester, Vermont, requesting that Mr. Calabrese be taken off the guaranty. (Id.). Most notably, Mr. Cappello certifies under oath that he did, in fact, send a written letter to Bombardier in or around March 2004 asking that Mr. Calabrese be removed from his obligations under the personal guaranty. (Id.).[6] Nevertheless, Mr. Cappello admits that he did not keep a copy of this letter because "we did not have a copy machine in our office," and that although "there would have been an unsigned copy of the letter on our computer hard drive . . . it stopped working and became inoperable later that year." (Id.).

On the other hand, Tim Jacobs, Recovery Manager for GE, certifies that GE "never received from any of the Defendant Guarantors, including, but not limited to, the Defendant

[6] In further support of this claim, Defendants make the related argument that several months after Vincent Calabrese Jr.'s letter of revocation had been sent to Bombardier, Bombardier requested that Calabrese & Cappello Realty, Inc., the company which owned the property on which the marina was located, enter into a separate guaranty related to the November 1999 Security Agreement. (Def. Opp'n Br. at 4). "It was the individual defendants' understanding that this guaranty was meant to replace the termination of Vincent J. Calabrese, Jr.'s guaranty." (Id.). Kathleen Calabrese and Antonio Cappello each submitted sworn certifications to that effect. See Cappello Cert., ¶ 4; K. Calabrese Cert., ¶ 5. However Tim Jacobs, Recovery Manager for GE, submitted a sworn certification stating that "Calabrese & Cappello Realty, Inc. provided its Guarantee as consideration for Great Cove, Inc. requesting an increased line of credit of $750,000.00 to accommodate current and future orders." (Jacobs Aff., ¶ 8). Such conflicting evidence further confirms that there are genuine issues of material fact in dispute which preclude summary judgment.

Guarantor Vincent J. Calabrese, Jr., written notices of revocation indicating that the Guarantors . . . were revoking their Guarantees to [GE] . . . nor did [GE] ever agree to release the Guarantors . . . from their Guarantees." (Jacobs Aff., ¶ 14).[7] In fact, Mr. Jacobs certifies that, as late as August 2005, GE had sent Defendants Kathleen and Vincent Calabrese, Jr. a letter indicating that they were both responsible for the outstanding debt based on their personal guarantees. (Id., ¶ 16).[8]

Finally, although the parties do not focus on this issue, the Court notes that there is some dispute as to the specific date on which the alleged breach/default occurred. Compare Pl.'s Statement of Undisputed Facts, ¶ 9 (stating that the default date was June 16, 2005) with Def.'s Response to Pl.'s Statement of Undisputed Facts, ¶ 9 (noting that "while Great Cove admits there was a default, plaintiff does not provide any documentation showing the actual date of the default."). This date is obviously significant given Mr. Calabrese's alleged revocation of his personal guaranty in or around 2004. As a result, the Court concludes that the certifications submitted by the parties show that genuine issues of material fact exist as to whether Mr. Calabrese had revoked his personal guaranty by the date on which the default occurred. As a result, this Court cannot conclude as a matter of law that reasonable minds could not differ as to whether Mr. Calabrese would be subject to liability in this case. Because the alternative basis on which Defendants oppose Plaintiff's motion– namely that Plaintiff has failed to demonstrate that

[7] The Court notes that Vaughn Carney, Assistant Clerk and Assistant Secretary of and Counsel to Bombardier, submitted an affidavit in opposition to Defendants' cross-motion for summary judgment wherein he likewise certifies that Bombardier never received written notices of revocation from any of the guarantors, including but not limited to Vincent Calabrese, Jr. See Carney Aff., ¶ 8.

[8] A copy of this letter is attached as Exhibit G to Mr. Jacobs' Affidavit.

it is entitled to obtain a recovery from Defendants in this action – forms the very basis of Defendants' cross-motion, the Court will consider this argument in the context of addressing same.

**B. Defendants' Cross-Motion for Summary Judgment**

Defendants have filed a cross-motion for summary judgment on the basis that "Plaintiff cannot demonstrate that it is entitled to recover under the Security Agreement," thereby necessitating dismissal of Plaintiff's Complaint. In particular, Defendants argue that, under New York law,[9] it is Plaintiff's responsibility to tender proof of the assignment in this litigation. (Def. Br. at 5). See, e.g., Citibank (South Dakota), N.A. v. Martin, 11 Misc.3d 219, 226 (N.Y. City. Civ. 2005) ("It is the assignee's burden to prove the assignment. Given that courts are reluctant to credit a naked conclusory affidavit on a matter exclusively within a moving party's knowledge . . . an assignee must tender proof of assignment of a particular account . . . .") (internal citations omitted). Because Plaintiff has not produced a copy of the Purchase Agreement entered into between Bombardier and GE, Defendants argue that Plaintiff's breach of contract claim is "legally infirm." (Def. Br. at 7, 9).

Plaintiff doe s not dispute that "[t]his is a lawsuit against the Defendants to obtain money damages resulting from the Defendants' indebtedness to [GE], as assignee of certain assets of Bombardier . . ." (Pl. Opp'n Br. at 1). Nor does Plaintiff dispute that they have chosen not to produce the relevant Purchase Agreement entered into between Bombardier and GE because such documentation contains – according to Plaintiff – "proprietary and confidential information and

[9] It is undisputed that New York law applies to Plaintiff's breach of contract claim. See, e.g., Def. Cross-Motion Br. at 5; Pl. MSJ Br. at 5.

is voluminous." (Pl. Opp'n Br. at 7). Nevertheless, Plaintiff maintains that the Affidavits submitted by Tim Jacobs of GE and Vaughn Carney of Bombardier, together with the Global Bill of Sale Agreement, sufficiently demonstrate that GE is, in fact, the proper party to assert a claim in this action. (Id. at 3).[10]

The Court has closely reviewed the parties' submissions on this issue, and notes that Plaintiff submits the following pieces of evidence in support of its position: (1) the Global Bill of Sale Agreement which illustrates that GE acquired Bombardier's right, title and interest in certain of its assets on May 31, 2005; (2) the Affidavit of Tim Jacobs, who certifies that Bombardier sold and assigned all of its right, title and interest in the November 1999 Security Agreement to GE in May 2005; and (3) the Affidavit of Vaughn Carney, a Bombardier employee, who certifies that Bombardier transferred to GE all of Bombardier's right, title and interest in the November 1999 Security Agreement in May 2005.

Notwithstanding such evidence, and the reasonable inferences that can be drawn therefrom, the Court agrees with Defendants that the Global Bill of Sale Agreement, while significant in its own right, should be read in conjunction with the Purchase Agreement – which Plaintiff's have chosen not to produce. For instance, the Global Bill of Sale Agreement provides, in relevant the following:

> **Subject to the terms of the Purchase Agreement**, Seller hereby sells, conveys, assigns, transfers and delivers to Purchaser, its successors and assigns, to have and to hold the same for the use

[10] Plaintiff makes the related argument that, because Bombardier agrees that GE "is the property party to sue on the relevant contract documents, Defendants are estopped from asserting that the assignment is not valid." (Pl. Opp'n Br. at 6). Notably, however, Plaintiff provides absolutely no legal authority in support of this argument.

> and enjoyment of Purchaser and its successors and assigns forever, absolutely and unconditionally, all of Seller's right, title and interest in, to and under all of the **Purchased Assets** . . . .

(Carney Aff., Ex. B) (emphasis added). The Global Bill of Sale Agreement does not, however, define the term "Purchased Assets," nor does it make any reference whatsoever to the November 1999 Security Agreement. The Court can only assume that this term is defined in the Purchase Agreement. In fact, the only evidence before this Court linking the term "Purchased Assets" with the Security Agreement are the Affidavits submitted by Tim Jacobs and Vaughn Carney, respectively, which both state, in nearly identical terms:

> On or about May 31, 2005, [Bombardier] sold, conveyed, assigned, transferred, and delivered to [GE] all of [Bombardier's] right, title and interest in certain Purchased Assets, including the November 5, 1999 Inventory Security Agreement and Power of Attorney between Great Cove . . . and [Bombardier], as well as the Guarantees referenced below that are the subject of the pending litigation.

(Carney Aff., ¶ 6; Jacobs Aff., ¶ 2). Neither Mr. Carney nor Mr. Jacobs attach any documentary proof – other than the Global Bill of Sale Agreement which does not define the term "Purchased Assets" – in support of this statement. Moreover, neither affiant explains the basis on which they came to understand the definition and/or scope of the term "Purchased Assets," as set forth in the Global Bill of Sale Agreement.

Based on the evidence presented by the parties on this issue, the Court finds that reasonable minds may certainly differ as to the importance of such evidence, and the conclusions to be drawn therefrom. See, e.g., Overpeck v. Chicago Pneumatic Tool Co., 823 F.2d 751, 763 (3d Cir. 1987) ("The fact that reasonable minds can differ as to the proper interpretation of the

evidence only reinforces the contention that the issue is one for the jury to decide with reference to its collective common sense and insight into human nature, born of experience and in light of its personal observations . . . ."); Trustees of Joint Bd. of IBEW Local No. 164 v. C.V.I. Elec., No. 89-3827, 1990 WL 153959, at *2 (D.N.J. Sept. 24, 1990) ("If reasonable minds could differ as to the import of the evidence, summary judgment should not be granted.") (citations omitted). For instance, one might believe that the Global Bill of Sale Agreement, coupled with the affidavits submitted by both assignor and assignee stating that Bombardier's interest in the November 1999 Security Agreement now belongs to GE, are sufficient to demonstrate that GE is, in fact, the assignee of Bombardier's interest in the November 1999 Security Agreement. However, one might also infer that GE's failure to produce a copy of the actual Purchase Agreement suggests that its contents may be harmful to their case. See, e.g., Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) ("When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him."). Such disputes of material fact and issues of credibility must be sorted out by a finder of fact. Defendants' cross-motion for summary judgment is, therefore, denied.

**CONCLUSION**

Based on the reasons set forth above, the parties' cross-motions for summary judgment are denied. The parties are hereby advised to contact my Deputy Clerk, Lissette Rodriguez, to schedule a trial date for this matter.

An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares

DATE: September 29, 2008 ___________________ United States District Judge